ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
DIANA M. KWOK (Cal. SBN: 246366)
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6529
    Facsimile: (213) 894-0141
    E-mail:   diana.kwok@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>BENGA AKANNI OYENIRAN,<br><br>        Defendant. | Case No. CR 12-844-JAK<br><br>GOVERNMENT'S OBJECTIONS TO PRESENTENCE REPORT AND SENTENCING POSITION FOR DEFENDANT BENGA AKANNI OYENIRAN<br><br>Sentencing Date: January 31, 2013 |

    Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Diana Kwok, hereby files its response to the Presentence Report and its sentencing position with respect to defendant Benga Akanni Oyeniran.

    The government's response and sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

The government reserves the right to file a response to any sentencing position filed or submitted by defendant and to file any supplemental sentencing position(s) that may be necessary.

Dated: January 10, 2013         Respectfully submitted,

                                ANDRÉ BIROTTE JR.
                                United States Attorney

                                ROBERT E. DUGDALE
                                Assistant United States Attorney
                                Chief, Criminal Division


                                      /s/
                                _____
                                DIANA M. KWOK
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**Table of Contents**

I.   INTRODUCTION ............................................. 1

II.  STATEMENT OF FACTS ....................................... 2

III. THE PRESENCE REPORT AND THE GOVERNMENT'S POSITION ...... 3

    A.   The Probation Officer's Calculations.................3

    B.   The Sentencing Enhancement for Sophisticated Means...4

    C.   The Government's Position on the Other Terms of the Recommended Sentence.................................7

IV.  ANALYSIS OF THE SECTION 3553(a) FACTORS .................. 9

    A.   18 U.S.C. § 3553(a)(1).............................10

    B.   18 U.S.C. § 3553(a)(2).............................13

    C.   18 U.S.C. § 3553(a)(6).............................14

    D.   The Remaining Section 3553(a) Factors Also Support the Sentence Requested By the Government................15

V.   CONCLUSION ............................................. 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

On November 1, 2012, defendant Benga Akanni Oyeniran ("defendant") pled guilty to the single-count Information filed on August 31, 2012, in this action. In that Information, defendant was charged with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349.  Defendant pled guilty pursuant to an amended plea agreement filed with the Court on October 31, 2012.

The United States Probation Office filed its Presentence Report ("PSR") on December 27, 2012.  In the PSR, the Probation Officer calculated a total offense level of 24 and determined that defendant falls within Criminal History Category IV.  The Probation Office's calculation of the total offense level did not include application of the sentencing enhancement for sophisticated means, instead deferring to the judgment of the Court on the question of whether the enhancement should apply. PSR, ¶ 27.  Given the resulting Guidelines range of 77-96 months, the Probation Officer recommended a mid-range Guidelines sentence of 86 months' imprisonment to be followed by a five-year period of supervised release.  Recommendation Letter at 2. If the Court finds that the sentencing enhancement for sophisticated means should apply, the Probation officer recommends a mid-range Guidelines Sentence of 103 months' imprisonment to be followed by a five-year period of supervised release.  The Probation Officer also recommends that defendant be ordered to pay a special assessment in the amount of $100, and restitution in the amount of $478,643.

As discussed more fully below, the government generally concurs with the recommendation set forth by the Probation Officer in the PSR, with one exception: the government contends that the Court should apply the two-level sentencing enhancement for use of sophisticated means.  Accounting for this sentencing enhancement, the government contends that the total offense level should be 26, and requests that the Court sentence defendant to 103 months in prison, to be followed by a five-year period of supervised release.  The government believes that such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and to afford adequate deterrence.

## II.  STATEMENT OF FACTS

Pursuant to the plea agreement in this case, defendant admitted the following facts when he pled guilty on November 1, 2012, to the single-count Information:

> Beginning on an unknown date and continuing through at least July 11, 2012, defendant and others conspired to commit bank fraud.  The object of the conspiracy was carried out as follows: defendant obtained victims' identifying information from stolen mail and online searches and applied for new or replacement credit cards in the names of the victims but using addresses he controlled.  Defendant and his co-conspirators then used the fraudulently obtained credit cards to make ATM withdrawals and purchases, including at collusive merchants, who would split the proceeds.  Federally-insured financial institutions which were defrauded as a result of this conspiracy include American Express, Citibank, Credit One Bank, GE Capital Bank, Fifth Third Bank, and Capital One.

Docket No. 24 (Amended Plea Agreement) at 6.

Further, during a search of defendant's residence on July 11, 2012, detectives from the Hawthorne Police Department found credit cards in other people's names, Capitol One credit card

applications in other people's names, numerous keys that appeared to belong to various mailbox rental locations, a fraudulent identification with another person's photograph on it, and approximately 30 cellular SIM cards.  PSR, ¶ 15.

### III. THE PRESENTENCE REPORT AND THE GOVERNMENT'S POSITION

#### A. The Probation Officer's Calculations

As noted above, the Probation Officer calculated a total adjusted offense level of 24, based on the following base offense level and specific offense characteristics:

| | |
|---|---|
| Base Offense Level: | 7 [U.S.S.G. § 2B1.1(a)] |
| Specific Offense Characteristics: | |
| Loss of More Than $400,000: | +14 [U.S.S.G. § 2B1.1(b)(1)] |
| More Than 50 Victims: | +4 [U.S.S.G. § 2B1.1(b)(2)(B)] |
| Use of Any Means of Identification Unlawfully to Obtain Any Other Means of Identification or Possession of 5 or More Means of Identification Unlawfully Produced From or Obtained by the Use of Another Means of Identification: | +2 [U.S.S.G. §§ 2B1.1(b)(11)(C)(i), 2B1.1(b)(11)(C)(ii)] |
| Acceptance of Responsibility: | -3 [U.S.S.G. § 3E1.1(a)-(b)] |
| Total Offense Level: | 24 |

PSR, ¶¶ 22-36.

Based on defendant's criminal history, the Probation Officer also determined that defendant falls within Criminal History Category IV.  PSR, ¶ 55.  Given the resulting advisory

3

Guidelines range of 77-96 months, the Probation Officer recommends a mid-range Guidelines sentence of 86 months' imprisonment for defendant. Recommendation Letter at 2.

For the reasons set forth below, the government disagrees with the Probation Officer's decision to not apply the two-level enhancement for use of sophisticated means, and contends that the total adjusted offense level in this case should be 26.

**B. The Sentencing Enhancement for Sophisticated Means**

Section 2B1.1(b)(10)(C) of the Sentencing Guidelines provides for a two-level enhancement where a defendant employs "sophisticated means" in the execution of a fraudulent scheme. "Sophisticated means" are defined in the Guidelines as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1(b)(10)(C) n.8(B). For example, "locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means." Id. Further, "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." Id.

Pursuant to the Guidelines' definition of "sophisticated means," courts in the Ninth Circuit have applied the two-level sophisticated means enhancement where defendants have taken significant measures to not only commit fraud, but to avoid law enforcement's detection of that fraud. See, e.g., United States v. Zoval, 2012 U.S. Dist. LEXIS 148863 at *5-7 (E.D. Cal. October 15, 2012) (concluding that sophisticated means

4

enhancement applied where defendant "created false account statements to conceal the theft from the victims, had documents fraudulently notarized to conceal the fraud from the brokerage, and had friends open new bank accounts into which she secreted stolen funds.")

Most recently, in United States v. Juan-Gonzalez, 2012 U.S. App. LEXIS 17766 at *3-4 (9th Cir. August 22, 2012), the Ninth Circuit affirmed the ruling of a district court in the Central District of California, finding that the district court correctly applied the enhancement where the defendant "used multiple business and personal bank accounts to conceal the investment funds and make tracing difficult," and "[d]efendant changed the name of his investment group because he was being investigated, filed a fraudulent form with the SEC, offered equity investments in a shell company, and convinced investors to roll-over their investments into stock in the shell company so he could avoid paying interest."

In United States v. Carter, 2010 U.S. Dist. LEXIS 40279 at *5 (N.D. Cal. April 5, 2010), the court also found that the facts supported application of the sophisticated means enhancement where the defendant's "scheme involved multiple layers of fraud, multiple private entities, and multiple instances of unlawful behavior." Specifically, the court found that the defendant had employed a "sophisticated, multi-stage scheme" insofar as he "obtain[ed] personal information for a large number of individuals . . . used sophisticated equipment and tools to create documents of a sufficient quality to defraud numerous banks and credit card issuers . . . [and] used the

fraudulently generated credit cards to load-up prepaid debit cards which were then used to purchase goods and services, rather than simply making purchases with the fraudulent credit cards directly . . . ." Id.

Here, as in Juan-Gonzalez and Carter, the facts show that defendant and his coconspirators used a sophisticated and extensively planned scheme to defraud multiple banks by using the personal identifying information of numerous individuals. As part of the scheme, defendant and his coconspirators used multiple different phone numbers to contact banks while impersonating individual victims. At the request of defendant and his coconspirators, the banks would either issue credit cards to addresses controlled by members of the conspiracy, or conduct balance transfers to other credit cards that were also controlled by members of the conspiracy. The balance transfers allowed defendant and his coconspirators to artificially increase the credit lines available to them on certain credit card accounts and possibly delay detection by law enforcement. In addition, defendant and his coconspirators made "purchases" from collusive merchants who did not provide any goods, but merely accepted funds from victim financial institutions and shared those funds with members of the conspiracy.

As stated in the plea agreement, defendant's role in the conspiracy was to obtain victims' identifying information from stolen mail and online searches and apply for new or replacement credit cards in the names of the victims, using addresses that he and his coconspirators controlled. In an effort to conceal his identity and avoid detection, defendant not only used

multiple different phone numbers to contact the financial institutions, but also used numerous mailing addresses to receive the fraudulently obtained credit cards. Notably, during the July 2012 search of defendant's bedroom, law enforcement seized approximately 30 cellular SIM cards and numerous different keys that appeared to belong to various mailbox rental locations. In addition, detectives found the personal identifying information of approximately 51 victims on defendant's computer. Based on an investigation of the IP addresses, phone numbers, and mailing addresses used by defendant and his coconspirators to take control of victims' accounts, the government determined that defendant and his coconspirators were able to compromise the bank accounts or credit card accounts of over 190 individuals.

Given the large number of victims involved and the measures taken by defendant and his coconspirators to avoid detection of the scheme, the facts support a finding that defendant was engaged in a sophisticated scheme that was both complex and intricate. Accordingly, the government requests application of the two-level enhancement for use of sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C).

### C. **The Government's Position on the Other Terms of the Recommended Sentence**

The government concurs with the Probation Officer's Criminal History Category calculation, which places defendant in Criminal History Category IV. The government also concurs with the Probation Officer's recommendation that defendant's sentence

include a five-year term of supervised release, and payment of a $100 special assessment.

Although the government generally agrees with the Probation Officer's recommendation that defendant pay restitution in the amount of $478,643, the government requests that the amount of restitution to be paid to each victim bank be modified as follows, so that the total amount of restitution is $478,643.87:

| Victim | Amount |
|---|---|
| Fifth Third Bank | $300,281.28 |
| American Express | $ 73,340.97 |
| GE Capital | $ 50,172.93 |
| Capital One | $ 37,514.05 |
| Citibank | $ 10,146.42 |
| Chase Bank | $  7,188.22 |
| Total: | $478,643.87 |

With regard to the Probation Officer's sentencing recommendations, the government contends that a sentence of 103 months of imprisonment – which would account for a two-level sophisticated means enhancement – is appropriate here. As noted in the Probation Officer's Recommendation Letter, the Probation Officer recommends a sentence in the middle of the Sentencing Guidelines range, whether or not the Court finds that the two-level enhancement for use of sophisticated means should apply. Recommendation Letter at 4. Accordingly, because the relevant Guidelines range is 77-96 months for a total offense level of 24 and a Criminal History Category of IV, the Probation Officer recommends a mid-range sentence of 86 months if the Court

declines to apply the enhancement for use of sophisticated means. Id. at 2. Alternatively, if the Court chooses to apply the two-level enhancement for use of sophisticated means, then the Probation Officer recommends a sentence of 103 months, based on the relevant Guidelines range of 92-115 months for a total offense level of 26 and a Criminal History Category of IV. Id. at 4. For the reasons discussed above, the government contends that the facts of this case warrant application of the sophisticated means enhancement, and accordingly submits that a sentence of 103 months' imprisonment is appropriate for this defendant.

**IV.   ANALYSIS OF THE SECTION 3553(a) FACTORS**

As noted above, the applicable Guidelines sentencing range in this case is 92-115 months, based on a total offense level of 26 and a Criminal History Category of IV. While not definitive, the Guidelines range provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in 18 U.S.C. § 3553(a). See United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006). "To comply with the requirements of Booker, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a). This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." United States v. Nichols, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).

The Section 3553(a) factors are as follows:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –

    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) To afford adequate deterrence to criminal conduct;
    (C) To protect the public from further crimes of the defendant; and
    (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentence and the sentencing range established for the offense and the defendant as set forth in the Sentencing Guidelines;

(5) Any pertinent policy statement issued by the Sentencing Commission;

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a). As discussed further below, the government believes that the factors set forth in 18 U.S.C. § 3553(a) would be satisfied by a 103-month sentence and that such a sentence would be "sufficient, but not greater than necessary" to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a).

    **A.    18 U.S.C. § 3553(a)(1)**

18 U.S.C. § 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and

characteristics of the defendant.  These factors warrant a mid-range Guidelines sentence of 103 months' imprisonment in this case.

Defendant was charged with one count of conspiracy to commit bank fraud and played a key role in a conspiracy that not only resulted in over $478,000 in losses, but also compromised the personal identifying information of over 190 individuals. As he admitted in the plea agreement, defendant (1) obtained victims' identifying information from stolen mail and online searches; (2) applied for new or replacement credit cards in the names of the victims, using addresses that he controlled; and (3) used the fraudulently obtained credit cards to make ATM withdrawals and purchases – some of which were made at collusive merchants who would split the proceeds with defendant and his coconspirators.  See PSR, ¶¶ 9-12.

As noted in the Recommendation Letter submitted by the Probation Officer, defendant's criminal history reflects a "pattern of lack of respect for the law."  Recommendation Letter at 4.  In October 1990, just one year after defendant purportedly graduated from Youth with a Mission in Salem, Oregon,[1] he was convicted in Orange County Superior Court of grand theft of an access card and was sentenced to 36 months of probation, with a 90-day jail condition.  PSR, ¶ 40.  At the time of arrest, defendant was found using a fraudulent credit card and had four fraudulent credit cards in his possession. Id.

---

[1] Although defendant claims to have graduated from this institution in 1989, the PSR notes that the school could not find any record of defendant's attendance or enrollment there.

Just one year later, in November 1991, defendant was again convicted in Orange County Superior Court of grand theft of an access card. PSR, ¶ 41. On that occasion, defendant was found using a credit card in the name of another individual and was also convicted of burglary, grand theft of property, personation to make another liable, and forging a name on an access card. Id. He was sentenced to 36 months' probation with a 365-day jail condition. Id.

In February 2001, defendant pled guilty in this Court to making a false statement on a passport application and concealing stolen government property in the form of a stolen tax refund check in the amount of $217,942. PSR, ¶ 42. Defendant was sentenced to 24 months' imprisonment and 5 years' supervised release, which resulted in 3 criminal history points. Id. After serving the imposed term of imprisonment, defendant was deported on December 13, 2002. Id. at ¶ 43. In February 2004, after apparently re-entering the country illegally, defendant was sentenced to an additional 15 months' imprisonment for violating the terms of his supervised release by using a false name. Id. at ¶¶ 42, 44.

Three years later, in April 2007, defendant was convicted of grand theft in Los Angeles Superior Court, for which he received a sentence of 3 years in state prison – and three more criminal history points. PSR, ¶¶ 48-49. As part of the same case, defendant was also charged with burglary and unlawful use of another person's identifying information. Id. at ¶ 49.

While defendant was still on parole for his 2007 state sentence, he began committing acts in furtherance of the

conspiracy alleged in the instant case.  PSR, ¶ 53.
Accordingly, pursuant to U.S.S.G. § 4A1.1(d), two points are added to his criminal history point total, such that he has a total of eight criminal history points and falls in criminal history category IV.  Id.

Given the nature of the instant offense, defendant's admitted role in the conspiracy, and defendant's repeated engagement in fraudulent conduct, a mid-range Guidelines sentence of 103 months is appropriate.

### B. 18 U.S.C. § 3553(a)(2)

18 U.S.C. § 3553(a)(2) requires the Court to consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of defendant, and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  The government respectfully submits that a 103-month sentence will (1) appropriately reflect the seriousness of the offense and promote respect for the law; (2) deter future criminal conduct from both the defendant and others without being greater punishment than necessary; and (3) serve to protect the community.

By requiring defendant to spend 103 months in custody, the Court will impress upon defendant the seriousness of his crime, give defendant time to reconsider his actions in light of the consequences, and hopefully deter defendant from engaging in additional bank fraud conspiracies in the future.  Defendant's

significant criminal history, which includes multiple convictions for similar offenses, supports the need for a mid-range sentence to afford adequate deterrence from future criminal conduct.  Moreover, this sentence will remove defendant from contact with potential coconspirators as well as existing coconspirators, who will be deterred by defendant's sentence. Importantly, the community will also benefit from defendant's inability to engage in additional bank fraud conspiracies or commit other crimes while he is in custody.

In light of these considerations, a mid-range Guidelines sentence of 103 months' imprisonment is appropriate.

### C.   **18 U.S.C. § 3553(a)(6)**

18 U.S.C. § 3553(a)(6) requires the Court to minimize sentencing disparity among similarly-situated defendants.  One way of doing so is to correctly calculate the Guidelines range. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); see also Gall v. United States, 552 U.S. 38, 54, 128 S. Ct. 586, 599 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Sentencing Guidelines ranges.  Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").

Here, the government has correctly calculated the Guidelines range that accounts for application of the two-level

sentencing enhancement for use of sophisticated means.  Under the Guidelines, other defendants in the same circumstances as defendant, with an offense level of 26 and in criminal history category IV, could expect to serve between 92 and 115 months. Accordingly, if the Court chooses to apply the two-level sentencing enhancement for use of sophisticated means, a 103-month sentence for defendant is both appropriate and consistent with sentences of other similarly-situated defendants.

### D. The Remaining Section 3553(a) Factors Also Support The Sentence Requested By The Government

18 U.S.C. § 3553(a)(3) requires the Court to consider the kinds of sentences available.  Given the nature of defendant's offense, any sentence that does not involve some period in custody would not be appropriate here.  Indeed, the public interest in satisfying the other Section 3553(a) factors – obtaining a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public from further crimes of defendant – outweigh any interest in having defendant avoid time in custody.

18 U.S.C. § 3553(a)(4) and (5) require the Court to treat the Guidelines as merely "advisory" but to take them into consideration nonetheless, as the government has done herein and as the Probation Officer did in the PSR.

Finally, 18 U.S.C. § 3553(a)(7) requires the Court to consider the need to provide restitution to the victims of the offense.  As discussed above, the government contends that defendant should be ordered to pay restitution in the amount of

$478,643.87.  Such restitution should be paid to the victim banks in accordance with the amounts set forth in Section III-C above, so as to recompense them for the losses resulting from the fraudulent activities of defendant and his coconspirators.

## V.  CONCLUSION

For all the foregoing reasons, the government submits that the factors set forth in 18 U.S.C. § 3553(a) support the imposition of a sentence that includes a 103-month term of imprisonment, a five-year period of supervised release, payment of a $100 special assessment, and payment of restitution in the amount of $478,643.87.

Dated: January 10, 2013          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


         /s/
DIANA M. KWOK
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA