**ALEX R. KESSEL (State Bar No. 110715)**
15910 Ventura Blvd.
Suite 1030
Encino, California 91436
Telephone: (818) 995-1422
Facsimile: (818) 788-9408

Attorney for Defendant
**BENGA OYENIRAN**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>BENGA OYENIRAN,<br><br>        Defendant, | Case Numbers.: 2:12-CR-00844<br><br>**DEFENDANT BENGA OYENIRAN'S SENTENCING MEMORANDUM**<br><br>DATE:   June 20, 2013<br>TIME:    1:30 p.m.<br>COURT: Courtroom of the Honorable John A. Kronstadt, United States District Judge |

**TO THE HONORABLE JOHN A. KRONSTADT, JUDGE OF THE UNITED STATES DISTRICT COURT:**

Defendant BENGA OYENIRAN, by and through his attorney of record, Alex R. Kessel, hereby submits his sentencing position for the Court's consideration. Defendant requests a reasonable sentence, which takes into consideration the applicable sentencing guidelines range and the factors set forth in 18 U.S.C. § 3553(a).

//

//

//

//

//

//

1

# I.

# INTRODUCTION

On November 1, 2012, defendant plead guilty to violating a single count of 18 U.S.C § 1349, Conspiracy to Commit Bank Fraud.

Defendant pleaded guilty pursuant to a written plea agreement wherein the parties had no agreement as to the appropriate and applicable sentencing guidelines factors. The government did agree that defendant's involvement in the alleged conspiracy for purposes of sentencing began on February 11, 2012. The parties reserved the right to argue all applicable specific offense characteristics, adjustments and departures. Further, the parties reserved the right to argue for a sentence outside the sentencing guidelines pursuant to 18 U.S.C. Section 3553(a)(1) through (7).

# II.

# SUGGESTED SENTENCING GUIDELINE FACTORS:

1) <u>Base Offense Level</u>: 7 pursuant to U.S.S.G. § 2B1.1(b)(1)

2) <u>Loss Adjustment</u>:  Defendant submits he should only be responsible for the losses attributable to his IP address which was linked to an American Express account in the amount of  $40, 344.  The government's assertion he is responsible to other financial institutions for a loss amount of at least $200,000 is unsupported by the evidence that defendant either directly participated in the fraudulent conduct leading to the suggested losses, or the losses were reasonably foreseeable to defendant and were sustained by conduct in furtherance of the conspiracy charged against the defendant. The government has not even been able to indentify other purported co-conspirators in this matter.

Specifically, the government has provided no evidence that defendant nor anyone connected to the defendant engaged in identifiable conduct resulting in losses to the banks identified on page 16, paragraph 104, other than American Express. The government's attempt to establish losses from the other banks derive from weak inferences indicating card holder addresses were changed to different mailing addresses purportedly controlled by the fraudsters. However, none of the changed mailing addresses were connected to the defendant by eyewitness and/or documentary proof. Further, the government provided no evidence that

1 the photographs of persons actually withdrawing money from an ATM machine or making
2 fraudulent purchases, was actually the defendant nor anyone connected to the defendant.
3     Defendant submits pursuant to F.R.C.P. Rule 32 (3)(B), for any disputed portion of the
4 pre-sentence report or other contested matter, this Honorable Court must rule on the matters
5 in dispute. Further, the government has the burden of proving sentencing factors that enhance
6 a sentence. (see United States v. Kaluna (9th Cir. 1999) 192 F.3d 1188, 1194.). Based on the
7 forgoing, defendant respectfully requests the government produce sufficient evidence to
8 substantiate the loss adjustment recommended by the government.

  3) <u>Victim Adjustment:</u>

    Defendant submits there should be <u>no</u> adjustment pursuant to U.S.S.G. § 2B1.1 (b)(2)(B), for the number of victims.

    The government has provided no evidence that specific persons other than the six named financial institutions sustained any part of the actual loss determined under 2B1.1(b)(1). Further, case authority supports the proposition that individual card holders whose accounts were compromised are not victims for purposes of U.S.S.G. § 2B1.1 (b)(2), if the card holders' banks fully reimbursed their accounts (see United States v. Pham (9th Cir. 2008) 545 F.3d. 712, 719).

    Accordingly, defendant's offense level should <u>not</u> be increased due to the number of victims in the instant case.

  4) <u>Sophisticated Means Adjustment:</u>

    Defendant concurs with the probation department's justification for denying an increase to defendant's offense level based on U.S.S.G. § 2B1.1 (b)(10)(C). (See PSR page 7, paragraphs 26 and 27)

  5) <u>Use of Identification Adjustment:</u>

    Defendant submits an increase to the offense level pursuant to USSG § 2B1.1 (b)(11)(C)(i) thru (ii), is warranted in this matter.

    Based on the above-referenced applicable guidelines factors, defendant submits his total offense level should be calculated as follows:

        1) Base Offense level….7

        2) Loss Adjustment …. +6

        3) Use of Identifications…+2

        4) Acceptance of Responsibility…-2

Total Offense Level: 13

## III.

## CRIMINAL HISTORY CATEGORY

Defendant concurs with the PSR which places defendant into Criminal History Category III.

## IV.

## THIS HONORABLE COURT CANNOT PRESUME THE CALCULATED GUIDELINE RANGE TO BE REASONABLE

With respect to the Court's consideration of a sentence within the strict guideline range, defendant would indicate United States Supreme Court precedent has confirmed that the guidelines now are truly advisory and there is no underlying presumption at the District Court level that a guideline sentence is inherently reasonable. (See *Rita v. United States (2007) 127 S. Ct. 2456*, and *Nelson v. United States (2009) 129 S. Ct. 890*).

## V.

## APPLICABLE §3553(a) FACTORS

Defendant submits this Court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2)."

Prior to the United States Supreme Court's decisions in *United States v. Booker (2005) 543 U.S. 220,* and most recently in *Gall v. United States (2007) 128 S. Ct. 586*, the "history and characteristics of the defendant rarely had much impact at sentencing." In the ensuing years however, both the law and process has shifted back in the direction of making a defendant's personal history and characteristics an important part of the sentencing equation.

Pursuant to 18 U.S.C. §3553(a), the court in determining the particular sentence to be imposed shall consider:

    1) The nature and circumstances of the offense and history and characteristic of the defendant;

2) The need for the sentence imposed to achieve each of the enumerated purposes of sentencing: a) to reflect the seriousness of the offense, to promote the law and to provide just punishment for the offense; b) to afford adequate deterrents to criminal conduct; c) to protect the public from further crimes of the defendant; d) to provide the defendant educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The applicable statute, guideline range;

5) Policy statements;

6) The need to avoid sentence disparities among similarly situated defendants;

7) The need to provide restitution to any victims of the offense.

The Supreme Court gave the following sentencing instructions in *Gall:*

> "As a matter of administration and to secure nationwide consistency, the guidelines should be the starting point as an initial bench mark. The guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity for whatever argument they deem appropriate, the District Judge should then consider all these section 3553(a) factors to determine whether they support the sentence requested by the party…" (*United States v. Gall*, s*upra at pages 49 and 50.*)

**Relevant §3553(a) Factors as to Defendant Benga Oyeniran:**

1) Defendant accepted responsibility at an early stage of the proceedings.

2) Defendant was not involved in the loss attributed to him by the government. Unfortunately, the defendant had the computer in his residence which was tied to specific limited fraudulent activity. However, the government cannot with competent evidence identify defendant as the person involved with making the fraudulent cards, nor the use of the fraudulent cards, nor the transferring of funds from the accounts taken over, nor the receipt of the ill gotten gains.

3) Defendant has three minor children for whom he is their primary caretaker (see photos attached here as Exhibit "A").

4) Defendant has had legitimate employment in the United States.

5) Defendant most likely will be deported and separated from his family.

6) Defendant will not be eligible for certain custody programs which could lead to an earlier release, such as the Second Chance Act.

Based upon the foregoing circumstances and the factors set forth in §3553 (a), defendant requests a sentence of 24 to 36 months which is higher than the proposed guidelines sentence and appropriately considers all §3553(a) factors. Defendant further requests a recommendation for placement in a Southern California institution due to his family circumstances.

DATED: June 12, 2013                                              Respectfully submitted,

                                                                  s/Alex R. Kessel
                                                                  ALEX R. KESSEL
                                                                  Attorney for Defendant,
                                                                  **BENGA OYENIRAN**